# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **DONALD IVAN McCRAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:06CV984** |
| | ) | |
| **CHAPEL HILL POLICE** | ) | |
| **DEPARTMENT and** | ) | |
| **SGT. REBECCA KOCH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

**Sharp, Magistrate Judge**

Plaintiff Donald Ivan McCray, a prisoner of the State of North Carolina, brought this action pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his constitutional rights during a criminal investigation they conducted in early 2005. As Defendants, Plaintiff has named the Chapel Hill Police Department ("CHPD") and Sgt. Rebecca Koch. Defendants have answered the Complaint, and the Court, by Order of May 9, 2007, permitted a period of discovery. (Pleading No. 23.) Discovery is now closed, and a number of motions are ready for ruling, including a motion to dismiss by the Chapel Hill Police Department (Pleading No.13) and cross-motions for summary judgment by Plaintiff and Defendants (Pleading Nos. 38 and 61).

## The Complaint

In his *pro se* Complaint, Plaintiff McCray states that he was charged in early 2005 with three counts of first-degree rape, and three counts of first degree kidnapping and assault on a female. He alleges that Sgt. Koch of the CHPD led the investigation. Plaintiff states that the charges were soon changed to three counts of kidnapping, one count of first-degree rape, and two counts of first-degree sexual offense and assault on a female, and were later changed several more times from the charges stated in the original warrants against him. Plaintiff alleges that Sgt. Koch "had been on television labeling me the serial rapist" and every newspaper in North Carolina had his picture.

Plaintiff states that the alleged victims under these charges were B.G., M.R., and M.W.[1] Plaintiff's Complaint in this action is limited to the charges against him relating to two of the women, B.G. and M.R. Plaintiff alleges that he was wrongly accused and there was no probable cause to charge him with criminal offenses against these women. He concedes that he was convicted of the rape of the third woman (M.W.).

Plaintiff sues the CHPD and Sgt. Koch under a number of theories, including wrongful arrest, false imprisonment, character assassination, slander, and defamation. He seeks compensatory damages for lost wages, mental anguish, and pain and suffering, and additionally seeks punitive damages.

---

[1] The women are identified in this Memorandum Opinion and Order by use of their initials only.

## The Rule 12 Motion to Dismiss of the CHPD

On March 2, 2007, the Chapel Hill Police Department filed a motion to dismiss the Complaint on the basis that the CHPD is not a separately existing legal entity capable of being sued. Defendant CHPD relies upon well established legal authority that police departments are not separate entities that are subject to suit as "persons" in section 1983 actions. *See PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808 (D.N.J. 1993)(listing cases). Plaintiff presents no contrary authority. The Court notes that, while it is true that municipalities can be sued for actions of one of their departments, such as a police department, Plaintiff includes no allegations of any policy or custom of the Town of Chapel Hill related to his arrests that would be sufficient to state a claim for municipal liability under section 1983. *See generally Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Accordingly, the motion to dismiss (Pleading No. 13) filed by the Chapel Hill Police Department is **GRANTED**.

## Non-Dispositive Motions before the Court

A number of non-dispositive motions are before the Court, including (1) Plaintiff's Motion for Relief Sought (Pleading No. 30); (2) Plaintiff's Motion for Discovery (Pleading No. 39); (3) Plaintiff's Motion to Amend Civil Claim (Pleading No. 40); (4) Plaintiff's Motion to Consolidate Filing Fees (Pleading No. 41); (5) Plaintiff's Motion for Discovery (Pleading No. 48); (6) Plaintiff's Motion for Discovery (Pleading No. 51); (7) Plaintiff's Motion to Suppress Conviction (Pleading No. 54); (8) Plaintiff's Request for Sgt. Koch's

Personal Notes and Grand Jury Notes (Pleading No. 55); and (9) Plaintiff's Motion for Information (Pleading No. 56). Defendants have responded to these motions, and the Court now enters the following rulings.

Plaintiff's Motion for Relief Sought (Pleading No. 30) is **DENIED**. Therein, Plaintiff requests an award of $2,000,000 for the violations alleged in the Complaint. The motion is denied since Plaintiff has not prevailed on his claims in this action.

Plaintiff's Motion for Discovery (Pleading No. 39) is **DISMISSED** as moot and requires no further order by the Court. The primary discovery issues raised in the motion were resolved by the Court in its Protective Order entered July 27, 2007. (Pleading No. 46.) By that order, the Court directed that Defendants were not required to produce documents not in their possession or control and that documents produced in discovery could be stamped "confidential" for use only in this litigation. After entry of the Protective Order, Plaintiff filed additional discovery motions, focusing upon the remaining discovery issues between the parties.

Plaintiff's Motion to Amend Civil Claim (Pleading No. 40) is **DENIED** as futile. Plaintiff seeks to add the Town of Chapel Hill as a defendant upon an allegation that the Town "is responsible for its officers and they employ the police officers . . . ." It is well established, however, that municipalities may not be held liable for the acts of their employees solely under a theory of *respondeat superior*, as Plaintiff attempts in his proposed amendment. *See Spell v. McDaniel*, 824 F.2d 1380, 1385-86 (4th Cir. 1987). Plaintiff also

-4-

seeks to add as a defendant the district attorney who prosecuted him. Such an attempted claim is futile, as Plaintiff has alleged nothing in his Complaint or in his motion to amend that could overcome the prosecutor's absolute immunity from suit for actions taken by him within his prosecutorial function. *See Imbler v. Pachtman*, 424 U.S. 409 (1976).

Plaintiff's Motion to Consolidate his Filing Fees (Pleading No. 41) is **DENIED**. Plaintiff has filed separate civil actions in this Court, and separate filing fees have been appropriately assessed. There is no basis for "consolidation" of the fees.

Plaintiff's Motion for Discovery filed August 3, 2007 (Pleading No. 48), Motion for Discovery filed August 6 (Pleading No. 51), Motion Requesting All of Sgt. Koch's Personal Notes filed August 17 (Pleading No.55), and Motion for Information filed August 23 (Pleading No. 56) are **DENIED**. On August 8 and 28, 2007, counsel for Defendants filed responses attesting that, in accordance with the Protective Order of July 27, 2007, Defendants produced to Plaintiff on August 8, 2007 all relevant and requested portions of the CHPD's file concerning Plaintiff's arrests in 2005. Defendants represent that they have in their possession or control no additional documents that are responsive to Plaintiff's discovery requests. Plaintiff has shown no reason for calling into question these representations by counsel. The Court finds that Plaintiff has had an adequate opportunity for discovery

-5-

regarding his claims, and Defendants have provided materials responsive to his discovery requests.[2]

Finally, Plaintiff has also filed a Motion to Suppress Conviction. (Pleading No. 54.) Plaintiff argues that there should be no mention in these proceedings of the rape case in which he was convicted, because he is complaining of wrongful arrest and false imprisonment only as to the two cases in which all charges against him were eventually dismissed. He says the rape charge he was convicted of is unrelated to the charges that were dismissed. The motion is **DENIED**. In reviewing the summary judgment motions, the Court must consider the issue of probable cause for Plaintiff's arrests, and consider particularly whether Sgt. Koch, in light of *all* the information she possessed, could reasonably have believed that probable cause existed for Plaintiff's arrest in the two cases that were later dismissed. Under the facts and circumstances of this case, as shown in the discussion which follows, information in the third case – the case that led to a conviction – was information that Sgt. Koch could reasonably have considered in evaluating probable cause in the other two cases.

---

[2]Plaintiff's Motion for Discovery (Pleading No. 51) is improper since Plaintiff has directed Rule 34 document requests to a non-party, the District Attorney in this case. Rule 34 provides for discovery directed to parties only.

## The Cross-Motions for Summary Judgment

**A.      The Summary Judgment Standard of Review**

Both Plaintiff McCray and Defendants have filed motions for summary judgment. (Pleading Nos. 38 and 61.)  A party is entitled to judgment as a matter of law upon a showing that "there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  The material facts are those identified by controlling law as essential elements of claims asserted by the parties.  A genuine issue as to such facts exists if the evidence forecast is sufficient for a reasonable trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In evaluating a forecast of evidence on summary judgment review, the court must view the facts and inferences reasonably to be drawn from them in the light most favorable to the nonmoving party.

When the moving party has carried its burden, the nonmoving party must come forward with evidence showing more than some "metaphysical doubt" that genuine and material factual issues exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), *cert. denied,* 481 U.S. 1029 (1987).  A mere existence of a scintilla of evidence is insufficient to circumvent summary judgment. *Anderson*, 477 U.S. at 252. Instead, the nonmoving party must convince the court that, upon the record taken as a whole,

-7-

a rational trier of fact could find for the nonmoving party. *Id*. at 248-49. Trial is unnecessary if "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

**B.      Factual Showings Made by the Parties**

A principal legal issue, although not the only issue, before the Court is whether a reasonable law enforcement officer in Sgt. Koch's position, knowing all that she knew, could reasonably have believed that there was probable cause to seek arrest warrants against Plaintiff McCray for sexual offenses against victims B.G. and M.R.  To answer this question, the Court must consider the information available to Sgt. Koch at the time she sought the warrants.  The parties have addressed  matters relating to the investigation in some detail.

**1.      Factual Showings Made by Sgt. Koch**

The summary judgment record made by the Defendants tends to show that Sgt. Koch led a complex investigation into alleged sexual offenses against victims B.G., M.R., and M.W.  Sgt. Koch, by affidavit and exhibits, has made the following showing regarding the 2005 investigation that led her to seek arrest warrants against Plaintiff McCray, charging him with sexual offenses against the three women.

In her affidavit, Ms. Koch states that, prior to retiring, she worked with Chapel Hill's police department for twenty years.  In 2005, at the time of Plaintiff's arrest, Sgt. Koch was working in the Investigations Division/Vice and Narcotics Unit.  Sgt. Koch was experienced and had been trained in the investigation of crimes involving adult rapes and sexual assaults.

-8-

(Pleading No. 63, Koch Aff. ¶ 3.)  In March of 2005, Sgt. Koch became involved in the investigation of the rape and sexual assaults of three victims in Chapel Hill, North Carolina. (*Id*. ¶ 4.)

On March 11, 2005, at approximately 1:42 a.m., victim B.G. reported to the police department that a black male, age thirty-five to forty, approached her as she was leaving a store on South Estes Drive in Chapel Hill.  (*Id*. ¶ 5, Ex. H.)  Initially, B.G. reported that the man grabbed her, checked her for a wallet, indicated that he had a gun, and drove off.  Based on this report, the incident was investigated as an attempted larceny/simple assault. (*Id*.)

One hour later, on March 11, 2005, at approximately 2:39 a.m., M.W. reported to the police department that as she was leaving work at North Carolina Central University in Durham, at 1:30 a.m., a white, two-door Oldsmobile or Buick pulled up next to her on Fayetteville Street in Durham. (*Id*. ¶ 6, Ex. G.)  M.W. described the driver as a black male in his early to mid-forties. She stated that he had a mustache and was wearing blue jeans. After saying a few words, the man forced M.W. into his car and began driving toward Chapel Hill.  He told M.W. that they were going to a white man's house so she could make some money. Eventually, the man stopped the car on the side of the road and turned off the headlights.  He told M.W. that he wanted her to "suck his dick" and he hit her on her head with his hand.  He then forced her to have oral sex with him.  While this was occurring, the man patted her chest area as if he were checking for wires.  Thereafter, the man forced M.W. to engage in vaginal sex. When she began to cry, the man hit her and told her to stop crying

or he would kill her. After ejaculating, the man started driving again and, after driving about two blocks, stopped to let M.W. out of the car to go to the bathroom. As M.W. shut the door, the man drove away. (*Id.*) After reporting the incident to the police, M.W. was taken to the hospital and a rape kit examination was performed, in part to see if any DNA evidence existed. (*Id.*)

On March 12, 2005, M.W. looked at photographs of different men and identified an individual (identified herein as "D.S.") as the man who assaulted her. (*Id.* ¶ 7, Ex. G.) M.W. was not shown a photograph of Plaintiff because Plaintiff was not a suspect at this time. (*Id.*) A copy of Plaintiff's photograph is attached to Sgt. Koch's Affidavit as Exhibit A. A copy of the photograph of D.S. that was identified by M.W. is attached to Sgt. Koch's Affidavit as Exhibit B.

Victim B.G. participated in follow-up interviews with the police on March 19 and March 25, 2005. (*Id.* ¶ 10, Ex. H.) On March 25, B.G. stated, for the first time, that she voluntarily got in the man's car because she thought he seemed nice. In the car, however, he threatened to shoot her, hit her and forced her to perform oral sex. B.G. reported that the man drove her to some apartments located nearby and stated that he knew some white guys at the apartment and wanted her to be his girlfriend. At this point, B.G. opened the door and ran behind the building. As she did this, she heard the man drive off at a high rate of speed. After the man drove away, B.G. flagged down a Chapel Hill police officer and reported the crime (at first, as an attempted larceny/simple assault). (*Id.*)

-10-

During the interview of March 25, B.G. reported that the man who assaulted her was driving a white car with a wood dashboard. (*Id.* ¶ 11, Ex. H.) B.G. looked at photographs of several men and identified an individual identified herein as "D.W." as the man who assaulted her. B.G. was not shown a photograph of Plaintiff because he had not yet been identified as a suspect. (*Id.*) A copy of the photograph of D.W. that was shown to B.G. is attached to Sgt. Koch's Affidavit as Exhibit D.

Victim B.G. did not have an address or any contact information and it was, according to Sgt. Koch, difficult to keep track of her during the investigation. (*Id.*) Because B.G. could not be located after Plaintiff became the suspect in the case, the police department was not able to show to her a photograph of Plaintiff or his car. (*Id.*)

For a short period of time, the police department considered D.W. and his brother, identified herein as "J.W.," as possible suspects for the assaults of M.W. and B.G. (*Id.* ¶ 8.) When D.W. was interviewed, he denied any involvement in the assaults but indicated that his brother J.W., who looked like him, might have been involved. (*Id.*) The two brothers were ruled out as suspects as the investigation unfolded and after the DNA evidence obtained from M.W. matched Plaintiff. (*Id.*, Ex. K.) Pictures of D.W. and J.W. were included in the photographs viewed by M.W. on March 12, 2005. M.W. did not identify either of these two men as the person who assaulted her. (*Id.*)

-11-

On April 13, 2005, at approximately 7:14 a.m., the police department received a report from victim M.R. (*Id* ¶ 13, Ex. I.) M.R. did not speak English, and the police department had to use an interpreter to interview her. (*Id.* ¶ 14.)

During her interview, M.R. reported that as she was walking to work on Legion Road in Chapel Hill, around 5:30 a.m., she was approached by a black male driving a white sedan. The man told M.R. to get in his car. Because she was afraid that he was going to shoot her, M.R. got in the car. She thought the man was going to drive her to work but he drove past the place of her employment. The man drove in the direction of Durham and then circled back to Ephesus Church Road. At this time, the man pulled down his pants and ordered M.R. to touch his penis. At some point while she was in the car, M.R. attempted to open the door and get out. The man ripped her shirt as he pulled her back into the car. The man eventually drove M.R. to Europa Drive and told her to get out of the car. (*Id.* ¶ 13, Ex. I.) M.R. reported to the police department that the man who assaulted her was a black male wearing jeans. (*Id.* ¶ 14, Ex. I.) She stated that she thought that the seats to the car were covered with a gray cloth and that the dashboard was smooth and gray. (*Id.*)

On May 11, 2005, Sgt. Koch received a call from an SBI agent indicating that the DNA evidence obtained from M.W. eliminated J.W. as a suspect. (*Id.* ¶ 16, Ex. K.) On May 23, 2005, the same agent reported that the DNA evidence obtained from M.W. matched a prior DNA sample obtained from Plaintiff Donald McCray. (*Id.* ¶ 17.) Upon obtaining this

-12-

information, Sgt. Koch ran a criminal history and background check on Plaintiff and determined that his last known address was listed as a Chapel Hill address. (*Id*.) ¶ 17.)

On May 23, 2005, a magistrate issued a search warrant allowing Plaintiff's premises and vehicle to be searched. (*Id*. ¶ 18.) The search was conducted on May 23, 2005. (*Id*.) During the department's investigation of Plaintiff, it was discovered that Plaintiff had access to and drove a white, two-door 1989 Buick. (*Id*.) The police department also discovered that Plaintiff was a forty-year old African American male, that he at times had a mustache, that he had connections to Chapel Hill, and that he had a criminal history, including assault on a female. (*Id*., Ex. K.) Photographs were taken of Plaintiff's vehicle (Exhibit F to Sgt. Koch's Affidavit), including photographs of the interior of the vehicle (Exhibit E to Sgt. Koch's Affidavit).

On May 23, 2005, M.R. was shown photographs of different individuals, including a photograph of Plaintiff. (*Id*. ¶ 20, Exs. I, L.) M.R. was not able to positively identify any of the men in the photographs as her assailant. (*Id*.) M.R. was also shown photographs of Plaintiff's car that were on Sgt. Koch's digital camera. M.R. indicated to Sgt. Koch that the car in the photographs looked like the white car that the man was driving when he picked her up on April 13, 2005. (*Id*.)

On May 23, 2005, three arrest warrants were issued by a magistrate charging Plaintiff with the following crimes in connection with M.W.: First-degree rape (N.C. Gen. Stat. § 14-27.2(a)), First-degree sexual offense (N.C. Gen. Stat. § 14-27.4(a)), and Kidnapping (N.C.

-13-

Gen. Stat. § 14-39).  (*Id.* ¶ 21, Ex. M.)  Two arrest warrants were issued charging Plaintiff with the following crimes in connection with M.R.:  Assault on a female (N.C. Gen. Stat. § 14-33(c)(2)) and Kidnapping (N.C. Gen. Stat. § 14-39).  (*Id.* ¶ 22, Ex. M.)  The assault warrant stated that M.R. was sexually assaulted.  Two arrest warrants were also issued charging Plaintiff with the following crimes in connection with B.G.:  First-degree sexual assault (N.C. Gen. Stat. 14-27.4(a)) and Kidnapping (N.C. Gen. Stat. § 14-39).  (*Id.* ¶ 23, Ex. M.)  Plaintiff was arrested on May 25, 2005 in Richmond, Virginia.

On May 27, 2005, the police department showed M.W. a picture of Plaintiff in a photographic line-up.  (*Id.* ¶ 25.)  While M.W. had previously identified another man (identified herein as "D.S."), when shown a picture of Plaintiff, M.W. positively identified Plaintiff as her assailant.  (*Id.*)  M.W. also positively identified photographs of Plaintiff's car.  (*Id.*)

In her Affidavit to this Court, Sgt. Koch states that, after May of 2005, Plaintiff's case was handled by the District Attorney's Office.  (*Id.* ¶ 26.)  According to Sgt. Koch, the number and nature of the criminal charges filed against Plaintiff may have changed after May of 2005.  She had no involvement, however, in the decision to add or dismiss any of the charges. (*Id.*)  Approximately one year after Plaintiff's arrest, M.R. informed an officer with the police department that she did not wish to pursue the matter further.  At that time, M.R. also indicated that she was not able to positively identify the interior of Plaintiff's vehicle when she was shown photographs of several different vehicles.  (*Id.* ¶ 27.)

-14-

Sgt. Koch states that Plaintiff was subsequently indicted by the grand jury for all of the charges that were initially brought against him in the May 23, 2005 warrants. (*Id.* ¶ 28.) Plaintiff was convicted of the charges concerning M.W. (*Id.*) It is Sgt. Koch's understanding that the District Attorney dropped the charges relating to B.G. and M.R. prior to Plaintiff's criminal trial. Sgt. Koch was not involved in this decision but understands that the District Attorney's Office was having trouble locating B.G., and that M.R. had indicated to the District Attorney's Office that she did not want to go through a trial. (*Id.*)

## 2. Factual Showings Made by Plaintiff McCray

Since Plaintiff's claims in this action focus upon the actions of Sgt. Koch and the details of her investigation, most of the underlying facts relevant to the case have been in the possession of Defendants. The exhibits attached to Sgt. Koch's affidavit constitute the primary evidence concerning the investigation. Plaintiff, of course, has had a full discovery opportunity regarding information held by Defendants. Plaintiff does point to several factual matters in briefing, however, that he considers to be important information for the Court's consideration.

In argument, Plaintiff contends that Sgt. Koch lacked probable cause to seek *any* arrest warrants against him with regard to crimes against victims B.G. and M.R. He also contends, as he did in his Complaint, that he was formally charged not only with sexual assault against B.G. and M.R., but also with *first-degree rape* as to these victims. He emphasizes that there could not have been probable cause for charges of rape as to B.G. and

-15-

M.R. since the investigative detail supplied by Defendants regarding these two victims refutes any suggestion they ever reported they had been raped during the sexual assaults against them.

Defendants have presented the May 23, 2005 warrants that show that Sgt. Koch sought, and received from a magistrate, formal charges that Plaintiff committed crimes against M.W. that included first-degree rape, and crimes against B.G. and M.R. that included sexual assault but *not* first-degree rape. Plaintiff's attempted evidentiary showing that he was actually charged with three separate rapes is set forth in his response to Defendants' summary judgment motion. Plaintiff writes that, when he turned himself in to the Richmond, Virginia police department in late May 2005, he was told by Officer K.T. Manns, who "ran Plaintiff's information to confirm any outstanding warrants," that he was charged in Chapel Hill, North Carolina, with one count of first-degree kidnapping, three counts of first-degree rape, and two counts of assault. (Pleading No. 70, Pl.'s Br. at 6-7.) He attaches to his response a document entitled "Reporting Officer Narrative," dated May 25, 2005, wherein Officer Manns filled in a report, saying that, "I received a hit conformation back for full extradition to Chapel Hill North Carolina. He had a outstanding warrant for 1 count of 1st degree kidnapping, 3 counts of 1st degree rape and 2 counts of assault. He was taken into custody and processed at lock up." Plaintiff has written on the document, "[p]roves that Plaintiff turned himself in and that the Chapel Hill Police had warrants for Plaintiff for 3 rapes. Meaning that two pertained to [B.G. and M.R.]."

-16-

Plaintiff also attaches to his response other documents produced in discovery by Defendants which tend to show that (1) Sgt. Koch, when interviewing Plaintiff's wife, told her that "one of the women that your husband raped has aids so you should get tested," (2) Sgt. Koch was still involved in the case against him as late as May 2006, and (3) the CHPD released information on May 25, 2005, that arrest warrants had been issued for Donald Ivan McCray, 40, "for first-degree rape, two counts of first-degree sex offense, two counts of first-degree kidnapping and assault on a female."

## C. Discussion and Analysis

### 1. Plaintiff's Claim of Wrongful Arrest

Sgt. Koch moves for summary judgment on Plaintiff's first claim on grounds that (1) no Fourth Amendment violation occurred in the arrest of Plaintiff because she had probable cause, based upon her investigation, to seek criminal warrants against Plaintiff with regard to the sexual assaults against victims B.G. and M.R., and (2) in any event, she is entitled to qualified immunity in this § 1983 action because a reasonable officer in her position could have believed there was probable cause to seek the arrest warrants. Plaintiff McCray moves for summary judgment on grounds that his Fourth Amendment rights were violated and that Sgt. Koch is not entitled to qualified immunity.

The Court's first task is to determine whether, viewing the facts most favorably to Plaintiff, Sgt. Koch violated a constitutional right held by Plaintiff. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the answer is no, the analysis is at an end. If the answer is yes, the

Court must consider whether the constitutional right was clearly established and whether it would be clear to a reasonable officer that the officer's conduct was unlawful. *Id.* at 201-02; *see also Gomez v. Atkins*, 296 F.3d 253 (4th Cir. 2002), *cert. denied*, 537 U.S. 1159 (2003).

Plaintiff McCray alleges a violation of his Fourth Amendment right to be free of an arrest without probable cause. Accordingly, the Court must determine whether probable cause existed for Sgt. Koch to seek arrest warrants against Plaintiff with regard to victims B.G. and M.R., and, if not, whether the absence of probable cause would have been evident to a reasonable officer in Sgt. Koch's position under all the circumstances. *See generally Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1990)(in determining whether an officer is entitled to qualified immunity, the guiding principle is that only where the showing of probable cause is so lacking as to render official belief in its existence unreasonable will the shield of immunity be lost). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As the Fourth Circuit noted in *Gomez v. Atkins*, "qualified immunity protects law officers from 'bad guesses in gray areas,' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" 296 F.3d at 261, *citing Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

"Probable cause" has recently been defined by the United States Supreme Court as follows:

> The long-prevailing standard of probable cause protects "citizens from rash and unreasonable interferences with privacy and from unfounded charges

-18-

of crime," while giving "fair leeway for enforcing the law in the community's protection." *Brinegar v. United States*, 338 U.S. 160, 176, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949). On many occasions, we have reiterated that the probable-cause standard is a "'practical, nontechnical conception'" that deals with "'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Illinois v. Gates,* 462 U.S. 213, 231, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) (quoting *Brinegar, supra,* at 175-176, 69 S. Ct. 1302); see, *e.g., Ornelas v. United States,* 517 U.S. 690, 695, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996); *United States v. Sokolow,* 490 U.S. 1, 7-8, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). "[P]robable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." *Gates,* 462 U.S., at 232, 103 S. Ct. 2317.

The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. See *ibid*.; *Brinegar*, 338 U.S., at 175, 69 S. Ct. 1302. We have stated, however, that "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt," *ibid.* (internal quotation marks and citations omitted), and that the belief of guilt must be particularized with respect to the person to be searched or seized, *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979). In *Illinois v. Gates,* we noted:

> "As early as *Locke v. United States,* 7 Cranch 339, 348, 3 L. Ed. 364 (1813), Chief Justice Marshall observed, in a closely related context: '[T]he term "probable cause," according to its usual acceptation, means less than evidence which would justify condemnation .... It imports a seizure made under circumstances which warrant suspicion.' More recently, we said that 'the *quanta* . . . of proof' appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. *Brinegar*, 338 U.S., at 173, 69 S. Ct. 1302. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision." 462 U.S., at 235, 103 S. Ct. 2317.

To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide

-19-

"whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause, *Ornelas, supra,* at 696, 116 S. Ct. 1657.

*Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003).

Sgt. Koch has set out her reasons for believing that she had probable cause to seek the warrants of May 23, 2005, with regard to victims B.G. and M.R. She states that,

29.    In my opinion, which is based on my training and experience, probable cause existed for plaintiff's arrest for the charges that were filed against him in May of 2005 concerning B.G. and M.R. (as well as M.W.). The incidents involving B.G. and M.R. were very similar to the incident involving M.W. Plaintiff was positively identified, by DNA evidence, as M.W.'s assailant. Plaintiff has been convicted of the charges associated with M.W. The assaults of all three victims occurred in the same general area and around the same general time. The manner of approach was the same. All three women were approached by a male driving a vehicle as they were walking alone near a road. At least two of the victims, including M.W., reported that they were patted down as if being checked for wires. Two victims reported being told by the man that he was taking them to a friend's house.

30.    All three women reported that the man who assaulted them was driving a white car, that he was an African American, and that he was in his forties.

31.    While B.G. identified the photograph of another individual [D.W.] as her assailant, D.W. bears a striking resemblance to plaintiff. Prior to plaintiff's arrest, M.W. had also identified another individual [D.S.] as her assailant. D.S. also bears a striking resemblance to plaintiff. Regardless of the victims' identification [from] other photographs, the physical description provided by all three victims of the assailant was very similar and all of the descriptions matched plaintiff who, again, is an African male, in his forties, who drove a white car.

32.    Prior to plaintiff's arrest, M.R. looked at the pictures of plaintiff's car on my digital camera and stated that the pictures looked like the vehicle that the man who assaulted her was driving at the time. B.G. described the interior of the vehicle as having a wood dashboard. This description matches

photographs of the interior of plaintiff's vehicle that were obtained prior to his arrest.

(Pleading No. 63, Koch Aff. ¶¶ 29-32.)

On review of the showing made by Sgt. Koch, and in view of all the evidence in the summary judgment record, the Court finds and concludes that Sgt. Koch lacked probable cause to seek warrants against Plaintiff McCray with regard to sexual-assault victims B.G. and M.R. on May 23, 2005. The ultimate test of probable cause may be stated as a "reasonable ground for belief of guilt" and that "the belief of guilt must be particularized with respect to the person to be . . . seized." *Maryland v. Pringle,* 540 U.S. at 371. The Court finds a lack of adequate particularization in the evidence in this case. Certainly, there existed a reasonable ground for belief that Plaintiff was guilty of the sexual assaults upon B.G. and M.R. The proximity in time and place with regard to the three crimes, the significant similarities in the *modus operandi*, the similarities in the descriptions of the assailants, and the solid evidence against Plaintiff in the crime against M.W. unquestionably gave rise to a reasonable ground for belief in Plaintiff's complicity in all three crimes. But when this Court looks for adequate particularization with regard to Plaintiff, the Court does not find it. Where is the particularized evidence of identification of Plaintiff? Certainly, there is a similar description given by the three victims, and the identification by B.G. and M.R. of other persons would not rule out Plaintiff in view of the apparent similarities in the pictures of the various suspects. Further, it is true that M.R. reported that the photograph of Plaintiff's car looked like the white car involved in the crime against her. While these and

-21-

other lines of evidence point toward Plaintiff generally, they do not, to the Court's mind, exhibit sufficient particularity to establish that probable cause existed to seek warrants against Plaintiff with regard to victims B.G. and M.R.

Having found that Plaintiff was arrested without probable cause under the warrants charging sexual assaults against B.G. and M.R., the Court must reach the question of whether Sgt. Koch is entitled to qualified immunity from liability under all the circumstances of the case. It is significant that the three crimes were committed in the same general area in a relatively small time frame. Plaintiff argues that a single person could not have committed the crimes against both victims B.G. and M.W. because the initial reports of those crimes indicated that they occurred at essentially the same time but in two different locations. However, the Court notes that the locations were not widely separated, the assailant in both instances was driving a car, and the time periods reported by the victims were not precisely established in the initial reports. Moreover, the initial report of victim B.G. soon proved to be less than definitive in its details, since she initially reported only an attempted larceny, and only later two weeks later told an investigator that in fact she had been forced to perform oral sex upon her assailant.

There were substantial similarities in the *modus operandi* of the three crimes. In each instance, the victim was walking alone when a car pulled up to her. Two victims, including M.W., reported that they were told they were being taken to a white friend's house. All three

-22-

women reported their assailant was driving a white car and was an African American in his forties.

Prior to the time Sgt. Koch first sought arrest warrants against Plaintiff, DNA evidence linked Plaintiff to the crime and M.W. B.G. identified a photograph of another individual (D.W.). Before Plaintiff's arrest, M.W. also identified a photograph of another person (D.S.). Subsequently, M.W. correctly identified a photograph of Plaintiff as her assailant, lending evidentiary support to the observable fact that the persons identified by victims B.G. and M.R., and at first by M.W., all bore a significant resemblance to each other and to Plaintiff . (Koch Aff., Exs. A-E.) The physical descriptions given by the three women matched Plaintiff. M.R. identified Plaintiff's white car as looking like the car that picked her up.

After careful consideration, the Court determines that Sgt. Koch is entitled to qualified immunity with regard to Plaintiff's Fourth Amendment claim. Although there was not probable cause to seek Plaintiff's arrest with regard to the sexual assaults against B.G. and M.R., a reasonable officer could have thought so. This case falls in that "gray area" noted in *Gomez v. Atkins*, where no bright-line determination was obvious. It was reasonable to believe, based upon all the evidence, that Plaintiff was the assailant not only as to M.W., but also as to B.G. and M.R., but the evidence, by a narrow margin, lacked the particularity required for probable cause. Sgt. Koch was neither incompetent nor intentionally violating the law in seeking the May 23, 2005 arrest warrants against Plaintiff. The evidence with

-23-

regard to crimes by Plaintiff against victim M.W. was extremely strong, including a positive DNA match, and the similarities between the crimes against M.W. and B.G. and M.R. were clearly sufficient for the officer to link the three crimes and reasonably believe they were committed by the same person.

For reasons set forth above, the Court finds that Sgt. Koch is entitled to summary judgment on Plaintiff's claim of wrongful arrest with respect to the May 23, 2005 sexual-assault warrants with regard to victims B.G. and M.R. In summary judgment briefing, Plaintiff continues to argue that he was actually arrested in late May 2005 on *three* first-degree rape warrants, for the alleged rapes of M.W., B.G., and M.R. He argues that Sgt. Koch could not have reasonably believed she had probable cause to seek three rape warrants since victims B.G. and M.R. never reported that they were raped, only that they were the victims of various sexual assaults.

This claim by Plaintiff is unsupported by any competent evidence. The arrest warrants of May 23, 2005, are before the Court. They are obviously the warrants that underlay Plaintiff's arrest on May 25 in Richmond, Virginia. There are no other warrants in the summary judgment record, and Plaintiff has had full discovery of Defendants' files. Plaintiff says Officer Manns told him there were three rape warrants, and he attaches a "Reporting Officer Narrative," in which a Richmond police officer recites that he received information from North Carolina that Plaintiff had outstanding warrants for "1 count of 1st degree kidnapping, 3 counts of rape and 2 counts of assault." (Pleading No. 70, Attach.) Officer

-24-

Manns' statement to Plaintiff is clearly hearsay. Even if the "Narrative" is admissible as a business or official record, the underlying information received from some unidentified declarant or computer server in North Carolina, purporting to represent that there were three separate rape warrants, is inadmissible hearsay under Federal Rules of Evidence 801 and is not competent for consideration under Rule 56 review. *See* Fed. R. Civ. P. Rule 56(e). This evidence is inadmissible not on the basis of some technicality, but for the very reason that its reliability is not shown and it is incapable of being tested for accuracy. There is *no* competent evidence before the Court that Sgt. Koch was involved in the issuance of warrants against Plaintiff beyond those issued on May 23, 2005, which resulted in his arrest two days later in Richmond. The warrants in issue involved charges of "1st degree sexual offense," and "sexual assault" with regard to victims B.G. and M.R., charges that perhaps can be confused by the public with "rape." Nonetheless, the record before the Court is clear that Plaintiff was charged with only one count of rape on May 23, 2005 – the rape of M.W. for which he was eventually convicted.

The Court finds and concludes that Plaintiff's Fourth Amendment claim, which he entitles "wrongful arrest," fails on the basis of the qualified immunity of Sgt. Koch.

## 2.    Plaintiff's Remaining Claims

In his Complaint, Plaintiff McCray asserts state tort law claims of false imprisonment, slander and defamation. Defendants have moved for summary judgment on these claims, as well. On review, the Court finds that these claims are entirely and without legal merit.

-25-

Plaintiff has not challenged his arrest for first-degree rape and other offenses against victim M.W. Indeed, he is now serving a prison sentence for those offenses. Since it is thus apparent that probable cause existed for his arrest and detention in late May 2005, Plaintiff's false imprisonment claim fails as a matter of law. *See Williams v. City of Jacksonville Police Dep't*, 165 N.C. App. 587, 596 (2004)(probable cause is an absolute bar to a claim for false arrest). After the arrest of Plaintiff, Plaintiff's detention was in the hands of the courts of North Carolina, and there is no evidence that Sgt. Koch gave false statements in court or otherwise acted tortiously with regard to the prosecution of Plaintiff.

Under his slander and defamation claim, Plaintiff alleges that Sgt. Koch made false and defamatory statements to newspapers and to Plaintiff's wife. In order to make out a claim of defamation, Plaintiff must show, *inter alia*, that Sgt. Koch made false statements to a third party. *See Averitt v. Rozier*, 119 N.C. App. 216, 218 (1995). In her sworn affidavit, Sgt. Koch states that she "did not personally talk to any media or news reporters concerning the investigation or plaintiff's arrest." (Koch Aff. ¶ 33.) Plaintiff has presented no evidence to the contrary. Plaintiff has attached to his summary judgment response news reports from the News & Observer and the Chapel Hill News. These reports are variously entitled "Attacks on women result in charges," "Suspect in 3 assaults arrested in Virginia," "Suspect in attacks under confinement," and "Bail set at $1 million for man accused of rape." Plaintiff does not say what he believes to be false in these reports, but he has highlighted phrases such as "Police have charged a man with attacking three women," and "A man charged with

-26-

sexually assaulting three women." These reports are not false. The warrants of May 23, 2005, included charges of sexual assaults with regard to victims M.W., B.G., and M.R. Nothing in the news reports complained of by Plaintiff is false. Nor is there any evidence that Sgt. Koch was in any way involved in these reports.

Plaintiff alleges that Sgt. Koch made a defamatory statement to his wife. Specifically, Plaintiff relies on his wife's affidavit wherein she states that Sgt. Koch stated to her that "one of the women that your husband raped has aids so you should get tested." (Pleading No. 70, Attach.) There is no showing in this case that the alleged statement regarding AIDS, assuming it was made, was false. And it was reasonable for the officer to believe that the sexual assaults against B.G. and/or M.R. could have resulted in the transmission of AIDS, even as could have the sexual assault of M.W.

Furthermore, Sgt. Koch avers, without contest, that "[a]ny conversations that I had with plaintiff's wife were in connection with the police department's investigation." (Koch Aff. ¶ 34.) Certain statements, even if defamatory, are subject to qualified privilege. In *Averitt*, the court explained the privilege as follows:

> A defamatory statement is qualifiedly privileged when made (1) in good faith, (2) on a subject matter (a) in which the declarant has an interest or (b) in reference to which the declarant has a right or duty, (3) to a person having a corresponding interest, right or duty, (4) on a privileged occasion, and (5) in a manner and under circumstances fairly warranted by the occasion and duty, right or interest.

*Averitt*, 119 N.C. App. at 219. The court specifically stated that "certainly a police officer has an interest in undertaking an investigation into allegations of criminal conduct and

engaging in good faith communications with potential witnesses and alleged victims, who have a corresponding interest in receiving information relating thereto." *Id.* at 218.

*Averitt* fully shields Sgt. Koch from any defamation claim with regard to her interview with Plaintiff's wife. Thus, the statement complained of by Plaintiff is not shown to be false and, in any event, falls well within the ambit of the qualified privilege described by the North Carolina Court of Appeals.

The Court construes no other legal claims to be raised by the *pro se* Complaint filed by Plaintiff McCray. To the extent that Plaintiff may be said to have attempted a claim of intentional infliction of emotional distress, such a claim would fail. In light of the discussion above, it is clear that Sgt. Koch has not engaged in the "extreme and outrageous conduct" necessary to make out such a claim under state law. *See Shillington v. K-Mart Corp.*, 102 N.C. App. 187, 197-98 (1991)(defendant's conduct must exceed all bounds tolerated by decent society and must cause mental distress of a very serious kind).

## Conclusion

For reasons set forth above, **IT IS ORDERED** that the motion to dismiss filed by Defendant Chapel Hill Police Department's (Pleading No.13) and the motion for summary judgment filed by Defendants Chapel Hill Police Department and Sgt. Rebecca Koch (Pleading No. 61) are **GRANTED**. **IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (Pleading No. 38), motion for relief sought (Pleading No. 30), motion to consolidate his filing fees (Pleading No. 41), motion for discovery filed August 3, 2007

(Pleading No. 48), motion for discovery filed August 6 (Pleading No. 51), motion requesting

all of Sgt. Koch's personal notes filed August 17 (Pleading No.55), motion for information

filed August 23 (Pleading No. 56), and motion to suppress conviction (Pleading No. 54) are

**DENIED**.  **IT IS FURTHER ORDERED** that Plaintiff's motion to amend civil claim

(Pleading No. 40) is **DENIED** as futile.  Plaintiff's motion for discovery (Pleading No. 39)

is **DISMISSED** as moot.

A separate judgment dismissing this action with prejudice will be entered

contemporaneously with this Memorandum Opinion and Order.[3]


_____/s/ P. Trevor Sharp_____
United States Magistrate Judge


Date: March 19, 2008

---

[3]  The parties have consented to the jurisdiction of the Magistrate Judge, and this matter has been referred to the undersigned for all proceedings.  *See* 28 U.S.C. § 636(c).